1
2
3
4
5
6

Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

**FILED**

JUL 23 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14

Mark Aussieker,

        Plaintiff,

v.

Diversified Global Ventures, Inc and
Holiday Tours International Defendant(s)

No. 2:19 CV 1384 KJM DB PS

**COMPLAINT FOR DAMAGES**
Trial by Jury not requested

15
16
17

Plaintiff MARK AUSSIEKER ("Plaintiff"), on behalf of himself alleges as follows:

18
19
20
21
22
23

1.    Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act "TCPA", 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

24
25
26
27
28

2.    Upon information and belief, Defendants or their agents have jointly and severally placed telemarketing calls to a telephone number Mr. Aussieker had registered on the national Do Not Call Registry without Mr. Aussiekers consent. As a result, Defendants are liable for those calls and their agents actions.

1

**I. PARTIES**

3.    Plaintiff Mark Aussieker is an individual and resident of the state of California.

4.    Defendant Diversified Global Ventures, Inc ("Transparency") is a California corporation that is licensed by the state of California to sell travel.  Transparency is a "person" as defined by 47 US.C. § 153 (39). They may be served through its registered agent

5.    Defendant Holiday Tours International ("HOLIDAY") is a Florida corporation that is licensed by the  state of California to sell travel.  HOLIDAY is a "person" as defined by 47 US.C. § 153 (39). They may be served through its registered agent

**II.    Jurisdiction & Venue**

6.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

7.    Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

8.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

9.    This Court has personal jurisdiction over the parties because Defendants systematically and continually have conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of his contact with Defendants from California.

**III. TCPA Background**

10.    TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that

1   "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone

2   Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. §

3   227).

4

5   **THE TCPA PROHIBITS TELEMARKETING CALLS TO NUMBERS LISTED ON THE**

6   **DO NOT CALL REGISTRY, UNLESS THE CALLER HAS THE RECIPIENT'S SIGNED,**

7   **WRITTEN CONSENT.**

8   11.     The national Do Not Call Registry allows consumers to register their telephone

9   numbers and thereby indicate their desire not to receive telephone solicitations at those

10   numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored

11   indefinitely, or until the registration is cancelled by the consumer or the telephone number is

12   removed by the database administrator." *Id.*

13   12.     The TCPA and implementing regulations prohibit the initiation of telephone

14

15   solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47

16   C.F.R. § 64.1200(c)(2).

17   13.     A person whose number is on the Registry, and who has received more than

18   one telephone call within any twelve-month period by or on behalf of the same entity in

19   violation of the TCPA, can sue the violator and seek statutory damages.   47 U.S.C. §

20   227(c)(5).

21

22   14.     The regulations exempt from liability a caller who has obtained the

23   subscriber's signed, written agreement to receive telephone solicitations from the caller. 47

24   C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which

25   the calls may be placed. Id.

26   15.     Any person whose receives any phone in violation 47 U.S.C. § 227(b)(1) (A)

27   can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B). This is commonly

28

3

refered to as the auto dialer statue or ATDS.

16.    47 U.S.C. § 227(b)(1) (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—   (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is   charged for the call, unless such call is made solely to collect a debt    owed to or guaranteed by the federal government."

17.    Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 USC 227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v. Crunch San Diego, LLC that an ATDS means more than what the statute says. The question is whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list."

18.    The Court answered in the affirmative merely that if the dialer dials numbers from a stored list, it is considered an ATDS. Marks decision is now the law of the land in the 9th circuit as of February 19th after the parties settled.

19.    All a plaintiff needs to show is that a call or text message was made using an auto dialer to a number assigned to cellular service, or that the calling party was charged for the call. In this case, plaintiff received calls on his cellular phones where he was charged for the call.

4

20.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

22.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23. 19.

24.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24. 20.

25.     It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

26.     These regulations are codified at 47 CFR 64.1200(d)(1)-(6).

27.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in

5

telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

28.    This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

29.    These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

30.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

31.    In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Red. 1830, 1844 ,i 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

32.    In the Matter of Rules and  Regulations Implementing the Tel. Consumer Prot. Act of 1991,  FCC Red. 12391, 12397 (1995). The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Red. 6574, 6574 (2013).

33.    Under the TCPA, a text message is a call. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951-52 (9th Cir. 2009).

6

### IV. Factual Allegations

34.     Plaintiffs phone number ending in 8006 was added to the Do Not Call list in February 2003

35.     Plaintiff does not have a home phone and primarily uses his cell phone for personal use and he is a residential subscriber.

36.     Plaintiff pays Google Fi directly a monthly service fee in exchange for cell service. Plaintiff is listed as the subscriber for the telephone number that was called.

37.     DEFENDANTS or their agents placed telemarketing calls, with an ATDS to plaintiffs cell phone which is on the Do not call list, without his consent

38.     Defendant Travel Transparency is a seller of travel

39.     Defendant Holiday Tours International is a telemarketer

40.     The calls initiated  were for telemarketing purpose (Promote Travel Transparency).

41.     DEFENDANTS may have hired a vendor to provide the "heavy lifting" for locating, qualifying, coordinating potential customers.   The calls placed by Defendants, it agents or vendors were made with auto dialer.

42.     DEFENDANT is liable for the vendors actions per *Charvat v. Echostar* and *United States v. Dish Network* matters (FCC-13-54A1 (Dec. Ruling))

43.     Mr. Aussieker has a concrete injury being the receipt of such phone calls that Congress intended to remedy through passage of the TCPA.

44.     Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, decreased battery life, could not listen to music while on the phone, the nuisance of receiving a telephone call with a pre-recorded message.

45.     The only requirement to enforce the TCPA is to indentify the party responsible for the calls. "rules generally establish that the party on whose behalf a

7

1   solicitation is made bears  ultimate responsibility for any violations." In re Rules &

2   Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and

3   Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).  Plaintiff feigned interest in the calls

4   properly identify the party responsible.

5

6       47.     One call was from "Private" to 916-705-8006 on 07/03/19  The call was

7   initiated by an automated telephone dialing system as indicated by a short delay of dead air

8   when the call first connected and the a pre-recorded message played about receiving two free

9   round trip tickets anywhere Southwest Airlines flies. The message and delay is indicative of

10   a ATDS. Plaintiff pressed one to be connected to an agent.  An unknown agent with a thick

11   foreign accent proposed that Plaintiff attend a "Travel Seminar in Granite Bay" to receive the

12   airfare.  Plaintiff  asked where in Granite Bay and who was selling the program. The

13

14   telemarketer falsely identified herself to be with "Transparency" at 190 Douglas Blvd instead

15   of truthfully saying she was calling on behalf of Diversified Global Ventures, doing business

16   as "Travel Transparecny Travel at 4190 Douglas blvd". Plaintiff asked where exactly and the

17   name of the company again, and he was hung up on

18       48.     One call was from "Private" to 916-705-8006 on 07/11/19  The call was

19   initiated by an automated telephone dialing system as indicated by a short delay of dead air

20

21   when the call first connected and the a pre-recorded message played about receiving two free

22   round trip tickets anywhere Southwest Airlines flies. The message and delay is indicative of

23   a ATDS. Plaintiff pressed one to be connected to an agent.  An unknown agent with a thick

24   foreign accent proposed that Plaintiff attend a "Travel Seminar in Granite Bay" to receive the

25   airfare.  Plaintiff  feigned intrest in the call since the previous agent had hung up on him after

26   asking questions. The telemarketer identified herself to be Michelle Reyes of

27   "Transparency" at 190 Douglas Blvd instead of truthfully saying she was calling on behalf of

28

8

Diversified Global Ventures, doing business as "Transparency Travel at 4190 Douglas blvd".

Michelle also promised 3 days, 2 nights in 5 star accommodations and $100 gift certificate to

a restaurant in addition to the round trip airfare from Southwest. Michelle said John Reyes

from the confirmation department would call back and verify Plaintiffs information.

49.     John Reyes called from "Private" to 916-705-8006 on 07/11/19  to verify

plaintiffs information and to send a confirmation email to plaintiff.   Mr. Reyes introduced

himself as the verifier from "Transparency" who would make sure plaintiff would received

everything that Michelle had promised.   Mr. Reyes said the company did not promote any

particular destination, airline or hotel, but was guaranteed round trip airfare to a destination

of his choosing at a 5 star hotel for 3 days and 2 nights. At the end of the call, Mr. Reyes

indicated that the name of the company was "Travel Transparency" and that plaintiff would

receive a confirmation email.

50.     Plaintiff received his confirmation email which contained the terms and
- Exhibit A
conditions[1]. The offer identified Travel Transparency as the party making the offer and gave

4190 Douglas Blvd[2].

51. The offer sounded reasonable to plaintiff since he stayed at the Maui Hyatt

Residence club in Feb 2019 for $3700 less than the cost to rent the same room on a timeshare

promotion.  Plaintiffs wife received free airfare for 2019 with a companion pass on

Southwest Airlines for signing up for a Visa credit card.  Plaintiff was in Branson Missouri

the third week of June 2019 and was offered a free 4 day/ 3 nights hotel stay in either San

Diego, Las Vegas, San Francisco or Miami plus $150 American express gift card .

52.     The confirmation email arrived and the incentive description was vague. The

---

[1] CA Bus. & Prof. Code § 17537.1 requires Transparency make certain disclosures in writing if the initial contact is through telephone.
[2] Bus. & Prof. Code § 17537.1(a)(1)

confirmation did not conform to the requirements listed in CA Bus. & Prof. Code § 17537

53.     The plaintiff searched the internet for answers and found many complaints.

54.     On one such complaint posted to facebook referred to the incentive as a "Unethical company using unethical marketing company to get you to come in and listen to their timeshare program. Don't waste your time. No free airline tickets or hotel stays..

 **Travel Transparency** Hello Tanya, we aim to please all our guests and sometimes misunderstandings arise. Your travel voucher is good for up to 18months; however as we disclose to all our guests there are certain requirements that need to be met. Such as 4 month redemption from date of issue, taxes, incidentals and availability of destinations.
Please take a moment to review your voucher and if you need any assistance, please give us an opportunity to assist you.
Like · Reply · 9w

55.     Travel transparency referred to the discrepancy as a misunderstanding, instead of accurately stating that they had received many similar complaints and if the terms and conditions were disclosed prior to people attending the sales presentation, it would lower corporate profits.

56.     Travel Transparency actively monitored, responded, and engaged with reviews on social media. Marcy Shaw even posted positive reviews about the Granite Bay location and maintains the Yelp page. Despite this knowledge of illegal telemarketing and "misunderstandings", TRAVEL TRANSPARECENCY continued to use the services of the exact same telemarketers, which resulted in the Plaintiff being called.

57.     Plaintiff confronted Derek Gough, the senior most executive for Transparency who said he was familiar with the incentive since the Granite Bay location used the same telemarketing company as the southern California company. When asked for a copy of the do not call policy, he reffered him to speak with Marcy Shaw. Plaintiff investigated Mr. Gough response and found that he registered that location with the state of California to be a location for "Travel Transparency".

58.     Marcy shaw ( Director of Sales and Marketing for Granite Bay location[3])

called plaintiff and admitted that she was aware that the telemarkter and or agents of

Travel Transparency had a pattern and practice of not disclosing that the airline

voucher required upfront payment, beyond taxes, reservation fees and deposits.

Marcy shaw revealed that had Travel Transparency provided a full written disclosure

of the terms of the offer,  Plaintiff would know how much the deposit, taxes fees and

potential departure days.

59.     During this call to plaintiff, Marcy Shaw admitted that she was aware that the

telemarketer and or agents of Travel Transparency had a pattern and practice of

concealing the fact that destination was not guaranteed.  Marcy shaw revealed that

had Travel Transparency provided a full written disclosure of the terms of the offer,

Plaintiff would have to chose a give two destinations and the unknown travel vendor

would pick the destination Plaintiff would go.

60.     During this call to plaintiff, Marcy Shaw admitted that she was aware that the

telemarketer and or agents of Travel Transparency had a pattern and practice of

concealing the fact that departure airport was not guaranteed.  Marcy shaw revealed

that had Travel Transparency make an accurate representation and provided a full

written disclosure of the terms of the offer,  Plaintiff would not be guaranteed to

departure from Sacramento since it may and most likely be from San Fransisco.

61.     During this call to plaintiff, Marcy Shaw admitted that she was aware that the

telemarketer and or agents of Travel Transparency had a pattern and practice of

promoting 5 star hotels, when in fact it was not likely that type of hotel would be

given out .  Marcy shaw revealed that had Travel Transparency make an accurate

---

[3] Marcy Shaw sent plaintiff a copy of "Holiday Tours International do not call policy" and signed the letter as "Marcy Shaw  Director of Sales and Marketing "on Travel Transparency letterhead.

representation and provided a full written disclosure of the terms of the offer, Plaintiff would be guaranteed a room within 20 miles of the airport and although a 5 star hotel would be possible, it would not be likely and the exact chances of receiving a 5 star hotel were unknown.

62.     During this call to plaintiff, Marcy Shaw admitted that she was aware that the telemarketer and or agents of Travel Transparency had a pattern and practice of promoting $100 restaurant gift certificate, when in fact it was a $100 savings potential after using the coupons for 10% off, 20% and 50% off. Marcy shaw revealed that had Travel Transparency make an accurate representation and provided a full written disclosure of the terms of the offer, Plaintiff would know exactly how much money he would have to spend to achieve a $100 savings but that figure was unknown to Marcy.

63.     During this call to plaintiff, Marcy Shaw admitted that she was aware that very few people utilized the incentives. Marcy Shaw said she wanted to give the actual incentive to Plaintiff and if he was happy, to come back and sit for the presentation.

64.     Plaintiff declined the offer because it was not the offer that was presented to him over the phone.

65.     John Reyes AKA John Acuna" called Plaintiff back to verify Plaintiffs attendance. During this call plaintiff informed John that he captured the call center's actual caller id and not the blocked number displayed. John immediately offered plaintiff his personal cell phone number and the two began a dialogue.

12

66.    Plaintiff reached out to John and through a series of text messages revealed that John had been working for as agent telemarketing on behalf of Travel Transparency for almost a year.

67.    John also revealed that all calls were recorded.  John texted plaintiff a screenshot of what appears to be an email with the subject line "Mark Aussieker Opening & Closing"

68.    John also revealed that calls were made using an auto dialer with a random numbers.

69.    PLAINTIFF believes he was called randomly because the agent did not know his income level or marriage status. Most marketing companies have this information prior to making calls.

Direct or Vicarious Liability

70.    For more than 20 years the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any viola tions." In the Matter of Rules and Regulations Impl ementing the Tel. Consumer Prot . Act of 1991 , 10 F.C.C. Red. 12391, 12397,r 13 (1995) .

71.    The FCC confirmed this principle again in 2013 when it explained that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 F.C.C. Red. 6574, 6574(2013). Both actual and apparent authority, and ratification , can be a basis for a finding of vicarious liability. Id. at 6586 ,r 34.

13

72.     The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unid entifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are id entifia ble, solvent , and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted , because "[s]ellers may have thousands of ' ind epend ent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." May 2013 FCC Ru l ing , 28 FCC Red at 6588 (137) (internal citations omitted).

73.     The FCC has rejected a narrow view of TCPA liabilityy, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. Id. at 6587 n. 107.

74.     DEFENDANT Travel Transparency is and are directly liable and responsible for the phone calls at issue because they actually made or initiated the calls to Plaintiff, or they substantially participated. Alternatively Defendants are vicariously liable for the conduct of the Holiday Tours International and their agents because Travel Transparency:

14

a)      authorized the phone calls; accepted tours that telemarketers booked.

b)      directly or indirectly controlled the persons who actually made or initiated the calls; For example a person complained and Travel Transparency requested a phone number to remove the callers name from the list.

C)      allowed the telemarketers to enter consumer information into Travel Transparency reservation system ,

e)      approved, wrote or reviewed the telemarketing sales script; OR

75.      Travel Transparency reasonably should have known or consciously avoided knowing  that the actual telemarketers were violating the TCPA and failed to take effective steps within their power to require compliance with the TCPA.

76.      Travel Transparency should have known or consciously avoided knowing that Holiday Tours was violating the TCPA and  Travel Transparency failed  to take effective steps  within  its power to require compliance with the TCPA.  Each call was recorded and they either willfully ignored the call recordings where they could have observed the behavior first hand or chose to ignore the recordings.

77.      Travel Transparency had a pattern and practice of receiving customer complains and thereafter blaming its vendors instead of taking any meaningfull action.

78.      Travel Transparency controlled the telemarketers and the numbers they could call. On one such occasion a Robert M. complained on facebook "They will not stop calling. Every day. All hours of the day"  Travel Transparency responded by requesting Robert's telephone number so they could permanently removing it from their list.

15

Robert ●●●●● doesn't recommend Travel Transparency.
March 29 · 🌐

They will not stop calling. Every day. All hours of the day.

1 Comment

👍 Like          💬 Comment          ↗ Share

Travel Transparency Hi Robert, we sincerely apologize for the issue you
have had with our marketing calls. Can you please send an email to
info@traveltransparency.com with your phone number so we can
permanently remove it from our list? Sorry again. Thank you for following up.

Like · Reply · 14w

79.     Travel Transparency monitored its telemarketers. On one such occasion, an individual posted to Facebook about abusive calling practices.    Travel Transparency responded that "We utilize a number of different marketing companies, but are committed to assuring all follow proper protocol and regulations."

80.     Travel Transparency delegated to Holiday Tours International, the ability to make a contract  (Incentive to attend presentation) between Plaintiff and Travel Transparency using parameters set by Travel Transparency, including Travel Transparency absolute control over whether and under what demographic criteria it would accept of Plaintiff or any other person as a customer.

81.     Travel Transparency participated in the telemarketer's script. Complaints span over a year and the same reference "two free round trip" airlines still appears.

FACTS COMMON TO ALL

82.     Plaintiff's cell phone number has  at  all  relevant  times  been  continuously listed on the National Do-Not-Call Registry

83.     Telemarketers  are  required  by  law  to  subscribe  to  and  comply  with  the Registry

16

84.     .As evidenced by the initial fact that Plaintiff's phone number at all relevant times has been continuously listed on the Registry , Defendants could not care less that any particular phone number may be listed on the Registry. Defendants use robo-calling because it allows for thousands of automated sales calls to be initiated in a very short period of time, but their sales representatives only need actually spend time on the phone with consumers who respond. Defendants thereby selfishly and illegally shift the burden of aggravation and wasted time to the public at large and away from themselves where it belongs.

85.     Defendants' conduct directed at Plaintiff is knowing, willful, wanton, reckless , intentional and/or grossly negligent.

CAUSES OF ACTION

.**COUNT 1**

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(c)(5)(B)**

86. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

87. Defendant's own conduct and/or by the fact that others made those calls on its behalf , ignoring the Do-Not-Call List, as demonstrated  by Defendant's  Call to Plaintiffs  cell phone,  violated  47 U.S.C.§227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

88. Defendant's own conduct and/or by the fact that others made those calls on its behalf , in failing to check the numbers against a cell phone list constitutes a knowing and/or willful

17

violation of 47 U.S.C. §227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) . Furthermore,

Defendant's conduct, in placing the Call to Plaintiff's cell phone, spoofing the caller id,

giving false name of the party calling , not disclosing the true name, telephone number and

address of the business constitutes a knowing and/or willful violation of 47

C.F.R.§64.1200(b)(2) and 47 C.F.R. §64.1200(d)(4) and therefore, Plaintiff is entitled to an

award of statutory treble damages in the amount of $1,500 for this violation.

## COUNT 2

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) – Auto Dialer

89. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

90. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

91. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 3

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) – pre recorded message

92. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

93. Defendant's own conduct (b) by the fact that others made those calls on its behalf by

18

1    placing a Call to Plaintiff's cell phone using pre recorded message, violated 47 C.F.R. §

2    64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an

3    award of statutory damages in the minimum amount of $500 for this violation.

4
     94. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b),
5
6    Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every

7    violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

8

9
                                          **COUNT 4**
10
     **Unlawful Recording and Intercepting of Communications against Defendants**
11
                   **(Violation of California Penal Code § 632.7)**
12

13       95.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and

14              further alleges as follows.

15
     96. Plaintiff participated in calls that he received while within the State of California and
16
17   that originated by and through defendants call centers. Plaintiff used a cellular telephone to

18   engage in those conversations. Plaintiff is informed and believes and on that ground alleges

19   that, at all relevant times,

20   97. Defendants and their vendor, had a policy and practice of using hardware and/or

21   software that enabled them to surreptitiously record and/or monitor conversations with
22
     Plaintiff who used cellular or cordless telephones to receive calls from defendant.
23

24   98. Defendants and their vendor,  had and followed a policy and practice of not disclosing

25   to Plaintiff that their cellular calls were recorded and/or monitored, Defendants and their

26   vendor, did not obtain, and could not have obtained, express or implied advance consent to

27   the recording or monitoring of those conversations. As a result, plaintiff had an objectively

28
                                          19

reasonable expectation that their calls were not being recorded and/or monitored. That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place. As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." (See Kearney v. Salomon Smith Barney (2006) 39 Cal. 4th 95.)

99. Defendants' conduct as described above violated California Penal Code § 632.7(a).Under Penal Code § 637.2, Plaintiff are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

**COUNT 5**

**Violation of RULES FOR PROMOTIONAL GIVEAWAYS**

**(Violation of California** CA Bus. & Prof. Code § 17537**)**

100. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows. Plaintiff suffered a concrete injury by having to make a request with Transparency and had to spend money on postage to mail letters requesting defendants honor the incentive offered.

101.   Defendants' conduct as described above violated California Bus. & Prof. Code §

17537  Plaintiff is entitled to the value of the incentive offered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against David Mkrtychev, for the following:

1.   Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

2.   For an order finding for plaintiff in all counts.

3.   For an order finding the defendant knowingly and willfully violated TCPA

3.   An award of $4500 in damages arising for three TCPA violations in counts 1.

4.   An award of $3000 in damages arising for two TCPA violation in counts 2.

5.   An award of $2000 in damages arising for two TCPA violation in counts 3.

6.   An award of $15,000 in statutory damages arising for three violations of CA **Penal Code § 632.7**.

7.   An award of the value of roundtrip airfare anywhere in USA, 2 nights accommodations in a 5 star hotel and $100 for Count 5

8.   For an order finding the defendant knowingly and willfully violated in count 5 is deemed Plaintiff prays for treble damages for each knowing or willfull violation.

9.   Any other relief the court deems proper.

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to

21

To the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Respectfully Submitted this 7th Day of July, 2019.**

Signature of Plaintiff

Date of signing: _7-22_ , 20_19_.

Signature of Plaintiff

Printed Name of Plaintiff   _Mark Aussieker_

# EXHIBIT A



**4190 Douglas Blvd Suite 400, Granite Bay, CA, 95746)**
**(435-640-8877)**
-Our Office is a little difficult to find. We are the last building on the backside of 4190 Douglas Blvd. Suite 400.We are beside Mind to Mindful business

Dear **Mark & Kimberly Aussieker,**

Your scheduled date and time for the Travel Transparency presentation is: **Thursday, 7/11/19 at 2:00 P.M.**

Congratulations on your upcoming visit. We are pleased you have decided to join us, and we want to take this opportunity to confirm your scheduled appointment as well as provide additional information. Your Gift is our way of saying "thanks" for taking the time to learn more about our great products and services. The informative presentation has something for everyone, and IT WILL BE FUN AND INFORMATIVE! Please bring this Invitation Letter with you.

**For taking the time to attend our presentation, we are happy to provide you with...**

REWARD CHOICES (CHOOSE ONE)

**Hawaiian or Cabos or Nationwide Airfare Adventure Including round-trip air transportation for two •**



**Detail of Guest Eligibility**

This is a nationwide marketing program and is invalid where prohibited by law. We are delighted to provide anyone with information about our products and services, but only the person named herein is eligible to receive a gift from this promotion. This promotion is not available to current members. Existing members may contact customer service as separate promotions may be available. Must not have attended a Travel Transparency presentation during the previous 18 months. Must be between the ages of 28-70 both and if married or cohabiting both parties must attend presentation together. Household income of at least $60,000. Must have a valid Credit Card (no debit) and Federal or State issued

photo ID. Must be fluent in English language and attend a 90 minutes presentation. Only one promotion per family, group or household. One gift per household per 18 months. Gifts cannot be combined or used for group reservations. We love kids, but due to space limitations no children are permitted to attend. No travel club OWNERS anymore.

**Directions:**
**4190 Douglas Blvd Suite 400, Granite Bay, CA, 95746**
**(435-640-8877)**
**–Our Office is a little difficult to find.we are the last building on the backside of 4190 Douglas Blvd. Suite 400.We are beside Mind to Mindful business**

Please plan i to arrive at least minimum of 15 minutes early for registration. As a courtesy o other guests, there is no le eway for late arrivals due to traffic or getting lost, etc. Late arrivals will be a ed to reschedule.

